# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ALBERT H. CALLAHAN & EILEEN V. CALLAHAN REVOCABLE LIVING TRUST.

---

EILEEN CALLAHAN,

        Petitioner,

and

DOUGLAS J. CALLAHAN,

        Appellant,

v

DIANE B. CALLAHAN,

        Respondent-Appellee.

UNPUBLISHED
December 26, 2017

No. 334816
Genesee Probate Court
LC No. 2016-203537-TV

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

This matter concerns the conveyance of a parcel of real estate located in Germantown, Tennessee (the Germantown property). Appellant, Douglas J. Callahan (Douglas), appeals as of right the trial court's opinion and order that found that a conveyance of the property in 2015 was improper under the terms of the Albert H. Callahan & Eileen V. Callahan Revocable Living Trust (the trust). The trial court ordered that the Germantown property be deeded back to the trust. It also ordered that Douglas pay three-fourths of the attorney fees incurred by respondent, Diane B. Callahan (Diane). We affirm.

## I. FACTS

Petitioner, Eileen V. Callahan (Eileen), and her now-deceased husband, Albert H. Callahan (Albert), acquired the Germantown property in 1999. The purchase of the property was financed through a deed of trust. Shortly thereafter, Albert and Eileen created the trust, and thereafter placed the Germantown property in the trust. Albert and Eileen refinanced their debt

-1-

twice through commercial lenders. At the end of each transaction, the Germantown property remained held in the trust.

In 2010, Albert and Eileen attempted to refinance the debt again but this time their lender refused to approve the transaction for a number of reasons, one of which being that the Germantown property was held in the trust. Diane, Albert and Eileen's daughter, then loaned over $140,000 to her parents to refinance the debt. A deed of trust was executed on November 19, 2010, recognizing a debt of approximately $141,000 owed to Diane. The deed of trust contained a due-on-sale clause, which provided that if the Germantown property was conveyed without Diane's approval, the entire debt then owing would become due and payable.

With regard to the Germantown property, the trust provides that on the death of both Albert and Eileen, the Germantown property shall be sold. The proceeds of the sale are first to be used to repay an earlier debt held by Diane and her former husband, Jason Blackwood.[1] Any remaining proceeds are to be split evenly between Diane and Douglas, who is the son of Albert and Eileen. The trust provides, however, that "if any tax savings or practical reasons exist that would indicate that" the Germantown property "should first be deeded to Douglas J. Callahan and Diane B. Blackwood-Callahan, then that shall occur. In the event the real property described above should be deeded to Douglas J. Callahan and Diane B. Blackwood-Callahan then I direct my Trustee to so deed it as tenants in common and not as joint tenants." Under the terms of the trust, the trust would "become irrevocable at the death of Albert H. Callahan or Eileen V. Callahan." Albert died in 2011. It is not disputed in this appeal that the trust became irrevocable by Albert's death.

The dispute in this matter began with a quit claim deed executed by Eileen in 2015. This deed purports to convey "unto Eileen W. [sic] Callahan a life estate for her lifetime and a life estate to Douglas J. Callahan for his lifetime, and do(es) hereby . . . convey unto Douglas J. Callahan and Diane B. Edens[sic],[2] jointly and not as tenants in common all right, title and interest in" the Germantown property. After this deed was executed, Diane instructed her attorney to initiate foreclosure proceedings, relying on the due-on-sale clause of the deed of trust. Douglas, who is an attorney, then instituted proceedings in the Genesee Probate Court. In these proceedings, Eileen was the petitioner, and Douglas acted as her counsel.

Douglas filed petitions on Eileen's behalf in the trial court. The first, a petition purportedly seeking limited supervision of the trust, asked the trial court essentially to mediate a family dispute over the property. The second petition asked the trial court, on an ex parte basis, to hold that the 2015 quit claim deed was allowed under the terms of the trust, and that the due-on-sale clause could not be enforced in light of a federal statute, 12 USC 1701j-3(d)(6). The trial

---

[1] It is not clear from the record whether this debt has been paid or is still outstanding.

[2] Diane, who is now married to Steven Edens, did not take her husband's name after their marriage. For purposes of this appeal, there is no dispute that Diane is the individual described as "Diane Edens" in the deed.

court declined to grant ex parte injunctive relief, explaining that there was no reason to decide the matter on an ex parte basis.

Soon after the trial court denied ex parte relief, Diane's counsel sent correspondence to Douglas and Eileen explaining that, pursuant to Diane's instructions, the foreclosure had been cancelled. Diane then filed a petition arguing that the 2015 quit claim deed breached the terms of the trust, and asked that the trial court enter an order compelling the conveyance of the Germantown property back into the trust, or alternatively, to void the quit claim deed. Eileen, through Douglas, filed a response to the petition and also filed a demand for a jury trial.

Diane filed three motions for summary disposition that led to the challenged opinion and order. The first motion, brought pursuant to MCR 2.116(C)(8), argued that Eileen's first petition, the petition seeking limited supervision of the trust, failed to state a cognizable claim. The second and third motions were brought pursuant to MCR 2.116(C)(10). The second motion sought summary disposition with regard to Diane's petition; the third sought summary disposition with regard to Eileen's petition seeking a declaration that the 2015 quit claim deed complied with the terms of the trust and for injunctive relief. After a hearing on the motions, the trial court granted summary disposition in Diane's favor with respect to the three petitions at issue. Having granted summary disposition with respect to these petitions, the trial court concluded that it was unnecessary to address whether a jury trial was required. The trial court ordered that the Germantown property be conveyed back to the trust. The trial court also awarded attorney fees to Diane, to be paid by Douglas. The trial court, relying on documents filed by Diane, also noted in its opinion and order that "there is good reason to believe that Eileen" was not pursuing the matter, and that Douglas "may be keeping litigation going against his client's wishes." The trial court, however, declined to make "a determination on this rather concerning issue . . . ."

Douglas thereafter filed this appeal both on behalf of Eileen and in his own individual capacity. Eileen then filed a motion to withdraw her claim of appeal, explaining that she did not authorize the appeal and that she wanted to convey the Germantown property back to the trust in compliance with the trial court's opinion and order. This Court granted Eileen's motion to withdraw the appeal,[3] but denied Diane's subsequent motion to affirm the trial court's opinion and order pursuant to MCR 7.211(C)(3).[4]

---

[3] *In re Callahan Revocable Living Trust*, unpublished order of the Court of Appeals, entered November 17, 2016 (Docket No. 334816).

[4] *In re Callahan Revocable Living Trust*, unpublished order of the Court of Appeals, entered January 18, 2017 (Docket No. 334816).

## II. DISCUSSION

### A. AGGRIEVED PARTY

We first address the somewhat unusual procedural posture of this case in that the remaining appellant, Douglas, was not a party before the trial court but was instead the attorney representing the petitioner, Eileen, whose claim of appeal has since been dismissed by this Court upon her request. The question arises whether Douglas, as the attorney representing Eileen before the trial court, qualifies as an "aggrieved party" under MCR 7.203(A) who may seek appellate relief in this Court from the order of the trial court. We conclude that as to the issue of attorney fees, as well as the underlying substantive dispute, Douglas is arguably an aggrieved party within the meaning of MCR 7.203(A).

MCR 7.203(A) requires that a party seeking appellate relief be an "aggrieved party." The appellate requirement that one be an aggrieved party is comparable to the requirement that a plaintiff have "standing" to initiate a claim before the trial court. See *Federated Ins Co v Oakland Co Road Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). While standing refers to the right of a plaintiff to initially invoke the power of the trial court to adjudicate a claimed injury, in an appellate context an appellant seeking relief on appeal must demonstrate the similar interest of being an "aggrieved party." *Matthew R. Abel, PC v Grossman Investments Co*, 302 Mich App 232, 240; 838 NW2d 204 (2013). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co*, 475 Mich at 291 (citations omitted). "An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the Court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case." *Id*. at 291-292.

In this case, although Douglas was not a petitioner before the trial court, he has a pecuniary interest that the trial court's orders affected. The quit claim deed issued by Eileen that forms the basis of the dispute in this case purported, in part, to convey a life estate in the Germantown property to Douglas. Because the trial court's order essentially nullified the quit claim deed, Douglas arguably has suffered a concrete and particularized injury that would have justified initially invoking the trial court's power, and which renders him an aggrieved party under MCR 7.203(A). Douglas also may properly challenge before this Court the trial court's order compelling him to pay attorney fees. See *Abel, PC*, 302 Mich App at 241 (an attorney gains a pecuniary interest by virtue of an order granting attorney fees).

### B. 12 USC 1701J-3(D)(6)

Douglas first argues that the trial court erred by holding that Diane could enforce the due-on-sale clause of the deed of trust in light of 12 USC 1701j-3(d)(6). We disagree for the simple reason that the trial court made no such ruling. Douglas contends that the trial court erred by concluding that the due-on-sale provision of the 2015 deed of trust was enforceable, despite the existence of 12 USC 1701j-3(d)(6). Pursuant to 12 USC 1701j-3(a)(1), a " 'due-on-sale clause' means a contract provision which authorizes a lender, at its option, to declare due and payable

sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." Pursuant to 12 USC 1701j-3(d)(6), "[w]ith respect to a real property loan secured by a lien on residential real property containing less than five dwelling units, . . . a lender may not exercise its option pursuant to a due-on-sale clause upon . . . a transfer where the spouse or children of the borrower become an owner of the property." Because the quit claim deed that created the conflict underlying this suit created interests held by Douglas and Diane, both children of Eileen, the deed would seem to fit the terms of 12 USC 1701j-3(d)(6). But we, like the trial court, have no occasion to reach that issue. After initially attempting to enforce the clause, Diane cancelled all foreclosure proceedings. Because of this decision, the trial court never reached the question and never ruled that the due-on-sale clause was enforceable. Simply put, the decision Douglas claims was made in error was never made at all.

## C. ATTORNEY FEES

Douglas next argues that the trial court lacked authority to impose attorney fees against him. We disagree. A trial court's decision on a request for attorney fees is reviewed for an abuse of discretion. *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (citation omitted). Factual findings upon which the trial court bases its decision are reviewed for clear error. *Id*.

A party is generally responsible for its own attorney fees. *Haliw v City of Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005). However, if authorized by statute or court rule, a party may be required to pay attorney fees incurred by another party. *Id.*; *Edge*, 299 Mich App at 127-128. In this case, Diane sought attorney fees pursuant to MCR 2.114. This rule provides:

> **(D) Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(E) Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

**(F) Sanctions for Frivolous Claims and Defenses.** In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

Douglas's argument fails to identify any legal error, apply any authority, or provide any basis for reversing the trial court's decision to sanction him under this court rule. "An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003). Moreover, his position seems based, once again, upon the false premise that the Germantown property was foreclosed upon by Diane. It was not. Douglas's argument is entirely devoid of merit.

## D. THE "PRACTICAL REASONS" CLAUSE

Douglas next argues that the trial court erred by granting summary disposition in Diane's favor because the 2015 quit claim deed is authorized by a clause found in Article VIII of the trust agreement. We disagree. "We review de novo the proper interpretation of a trust." *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013).

As this Court has explained:

A court must ascertain and give effect to the settlor's intent when resolving a dispute concerning the meaning of a trust. The settlor's intent is ascertained by looking to the words of the trust itself. If the trust's terms are ambiguous, a court must look outside the document to determine the settlor's intent, and it may consider the circumstances surrounding the creation of the trust and the general rules of construction. The fact that litigants disagree regarding the meaning of a trust, however, does not mean that it is ambiguous. A court must also read a trust as a whole, harmonizing its terms with the intent expressed, if possible. In sum, a court must enforce the plain and unambiguous terms of a trust as they are written. [*Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693-694; 880 NW2d 269 (2015) (quotation marks and citations omitted).]

Two provisions of the trust agreement are relevant here. The first is found in Article IV, which provides in relevant part that, "Notwithstanding anything herein, this trust shall become irrevocable at the death of Albert H. Callahan or Eileen V. Callahan." The second relevant provision, Article VIII, provides the following:

After the death of the *Settlors*[5] herein, the Trustees shall wind up the affairs of the Settlors in an orderly fashion and, in doing so, may exercise all the powers accorded a Trustee under the Revised Probate code of the State of Michigan.

---

[5] The settlors, as defined by the trust, are Albert and Eileen.

After payment of all debts, expenses, funeral expenses, and taxes, if any, the rest and residue of the Trust shall be distributed as follows:

*I direct that my Successor Trustee sell my real property in the City of Germantown . . .* and divide the proceeds in the manner following:

First, any part of the debt of One Hundred Thousand Dollars still owing by Albert H. Callahan and Eileen V. Callahan to Jason Blackwood and Diane D. Blackwood Callahan shall be repaid with interest at the rate of seven percent (7%).

Then, Fifty percent (50%) shall be given or devised to Douglas J. Callahan and fifty percent (50%) shall be given or devised to Diane B. Blackwood-Callahan, share and share alike and per capita. Provided, however, if any tax savings or practical reasons exist that would indicate that above described real property should first be deeded to Douglas J. Callahan and Diane B. Blackwood-Callahan, then that shall occur. In the event the real property described above should be deeded to Douglas J. Callahan and Diane B. Blackwood-Callahan then I direct my trustee to so deed it as tenants in common and not as joint tenants. [Emphasis added.]

Under the plain language of Article IV, the trust became irrevocable upon the death of Albert in 2011, and thereafter any conveyance of the Germantown property must comply with Article VIII. Douglas contends that the 2015 quit claim deed does comply with the mandates of Article VIII because that article allows the property to be deeded to Douglas and Diane if "practical reasons exist" to do so. Douglas fails entirely to acknowledge that Article VIII's terms apply only on the death of *both settlors* – i.e., both Albert and Eileen must be deceased before the "practical reasons" language comes into play. Eileen was clearly alive when she executed the 2015 quit claim deed, and as far as we are aware, is still alive today. Thus, Douglas cannot rely on the language of Article VIII to argue that the 2015 quit claim deed is valid.

Furthermore, Article VIII does not permit the conveyance effectuated by the 2015 quit claim deed. Article VIII specifically states that if the Germantown property is first deeded to Douglas and Diane, it must be deeded to them "as tenants in common and not as joint tenants." The 2015 quit claim deed purported to grant Douglas a life estate in the Germantown property for his lifetime, and a joint tenancy held by Douglas and Diane in the same property. The trial court did not err by concluding that the 2015 quit claim was not permitted by the terms of the trust.

E.. PURPORTED FACTUAL QUESTIONS AND THE RIGHT TO A JURY TRIAL

Finally, Douglas contends that the trial court erred by granting summary disposition pursuant to MCR 2.116(C)(10), despite the existence of purported factual questions. He also contends that the trial court's decision violated the right to a jury trial. We disagree.

"A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d

88 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, *but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial*. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [MCR 2.116(G)(4) (emphasis added).]

In this case, Diane sought summary disposition pursuant to MCR 2.116(C)(10), and she supported her motions with documentary evidence. The burden then shifted to Eileen to present documentary evidence creating material, factual questions. See *Quinto v Cross & Peters Co*, 451 Mich 358, 363; 547 NW2d 314 (1996) ("If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted."). Douglas contends that his verbal denials of certain allegations created factual questions sufficient to survive Diane's motions. Douglas is incorrect. Because Diane supported her motions with documentary evidence, the burden was on Eileen to "go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. at 362. His conclusory, verbal denials are clearly insufficient to create genuine factual questions.

Douglas also relies on a document filed with the trial court that was signed by Eileen, but was not notarized. "To constitute a valid affidavit, a document must be (1) a written or printed declaration or statement of facts, (2) made voluntarily, and (3) *confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation*." *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 711; 620 NW2d 319 (2000) (emphasis added). Thus, an unsworn document may not be considered by the trial court on a motion for summary disposition. *Rataj v City Romulus*, 306 Mich App 735, 755 n 8; 858 NW2d 116 (2014). Indeed, because it is not notarized, the document relied on by Douglas "is no affidavit at all." *Id*. The document fails to create a question of fact.

Douglas briefly argues that summary disposition was not appropriate because discovery was not complete. It is true that, as a general matter, summary disposition should not be granted before discovery is complete. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). However, it is proper to grant summary disposition before the completion of discovery if "further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Id*. (citation omitted). "If a party opposes a motion for summary disposition on the ground that discovery is incomplete, the party must at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). In this matter, Douglas failed to contend that further discovery would provide factual support for his

claims, or that summary disposition was premature for this reason. His claim that summary disposition was prematurely granted is without merit. Because summary disposition was appropriately granted on legal grounds, there is no violation of the right to a jury trial.

### III. REQUEST FOR DAMAGES PURSUANT TO MCR 7.216(C)

Diane asks this Court to exercise its authority under MCR 7.216(C) to award damages for the filing of a vexatious appeal. Pursuant to MCR 7.216(C):

1) The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because

(a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or

(b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.

(2) Damages may not exceed actual damages and expenses incurred by the opposing party because of the vexatious appeal or proceeding, including reasonable attorney fees, and punitive damages in an added amount not exceeding the actual damages. The court may remand the case to the trial court or tribunal for a determination of actual damages.

A request for sanctions under this rule is properly made by separate motion under MCR 7.211(C)(8). Accordingly, we deny Diane's request for damages under MCR 7.216(C), but do so without prejudice to Diane filing a motion seeking damages pursuant to MR 7.211(C)(8).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien