MOORE *v.* HILLSDALE COUNTY TELEPHONE CO.

1. PARTNERSHIP—EQUITY PLEADING—NAMES—PARTIES.

In the absence of a plea raising the objection that complainants, who constituted a rural telephone company, unincorporated, conducting its business as the Waldron Telephone Exchange, had not complied with the provisions of Act No. 101, Pub. Acts 1907, relating to persons doing business under fictitious names, the bill may be properly considered on the hearing as that of the individual complainants.

2. SAME—WINDING UP—TELEGRAPHS AND TELEPHONES.

A telephone corporation could not become assignee of the rights of a portion of the members of a local telephone exchange, and as such forcibly dispossess the members having control of the assets and property, even though it be admitted that the association was a partnership.

3. SAME—JOINT STOCK ASSOCIATION.

The members of a voluntary unincorporated telephone exchange, organized to provide service for the members, who were allowed to assign their interests or to give up the service without dissolving the organization, being unable to agree whether to merge with a connecting company or to remain independent, must stand upon their legal rights; in the absence of duly enacted by-laws authorizing such action, a part of the members could not effect a consolidation without the consent of the others.

4. SAME—CONTRACT—VOLUNTARY ASSOCIATIONS.

There can be no partnership, generally, without an agreement to create one.

5. SAME—JOINT STOCK COMPANY—JOINT VENTURE.

A joint stock company is an association of individuals for purposes of profit, possessing a common capital, contributed by the members and divided into shares transferable by the owner, who may possess one or more.

6. SAME—DISSOLUTION.

Such an association for the conduct of a telephone exchange, having no capital stock, or shares, not organized for profit, governed by a board of directors, subject to the action of a majority of the members, was not a partnership or joint

stock company, but constituted a joint adventure, nearest like a partnership, and the court of chancery could interpose to dissolve, wind it up, or require an accounting of its property; but dissolution and sale was improperly ordered, where no mismanagement or insolvency or dissension rendering its further transaction of business impracticable was shown: defendant telephone company claiming its assets, and in control thereof without the consent of the majority of the members is required to account and to surrender control.

Appeal from Hillsdale; Chester, J. Submitted January 23, 1912. (Docket No. 12.) Decided July 22, 1912.

Bill by Perry D. Moore and others against the Hillsdale County Telephone Company and others for an accounting. From a decree for defendants, complainants appeal. Reversed.

*Powell & Chase* and *Smith, Baldwin & Alexander* (*Frank A. Lyon*, of counsel), for complainants.

*Frankhauser & Cornell* and *Fellows & Chandler*, for defendants.

OSTRANDER, J. The Waldron Telephone Exchange appears to have originally been a neighborhood arrangement. I find no material contradiction of testimony for complainants here set out:

"Mr. J. M. Barnes and myself were the originators of it. We thought it a good thing to have an exchange among ourselves in the village, and went around and got all together into it that would, with the understanding that each one would share *pro rata* with the expenses. We bought material and divided the cost amongst us. I think there were 15 of the original starters of the phone. We estimated the probable cost, and they each agreed to take one. Mr. Gorsuch had two phones, Mr. Boyd, W. G. Boyd, had two phones, Mr. Hadley two phones, and Masters & Spray one phone, Jim Barnes one phone, A. D. Way one phone, myself one phone, C. W. Abbaduska one phone, W. F. Barnes one, I think Gish Bros. had one, and Gleason Bros. I am not sure about Gleason Bros.

being put in the first, though. I think there was 14 or 15 phones. They were all in the village of Waldron. From time to time after that others from the country around came in—different times they would try to get a line to come in and hook on with us. We would let them come in in the same way as we went in. They would either put it in themselves, stand their expense and pay, I think, it was $6 for the use of a drop on the board, or they could hire it done, just as they wished, but, after they came and hooked onto the board, they were considered as a member according to our by-laws. This went along until we had something like 175. * * * Westerly our farthest phone would be three miles, and east about three miles, south about two miles and a half, north about four miles. This organization or association has always done business under the name of Waldron Telephone Exchange. The first year we ran without any by-laws. Later we had by-laws. I think that I was secretary and treasurer and J. M. Barnes president. Later on we had credit and credit standing as an organization. We always got goods whenever we ordered them. They were first shipped to me for about two years, after that in the name of Waldron Telephone Exchange."

Later, the exact time does not appear, the usefulness of the system was increased by connections with other systems. The same witness testified:

"We have connections with toll lines with Fayette over the Fayette County Telephone Company's lines, and with the Williams county lines. Those were built in by themselves, and we merely received a per cent. for messages sent over them. We also have connections with the Hillsdale County Telephone Company and with the Bell Company, and have had ever since a year or two after we started. * * * We had an exchange and transmitted messages. When we first started, we put in a small switchboard, and had an operator to start with. We have had an independent building for our exchange since 1899 or 1900. We had booths, toll booths, in which people might talk."

The by-laws of the association are 18 in number, and give the name of the association, provide for officers, and their duties, including a manager. The by-laws of most

consequence in this discussion are numbered 9, 10, 12, 13, 14, 15, 17, 18, and are, with the preamble, here set out:

" Whereas, it has become customary and virtually necessary by modern invention and competition to organize into co-operative bodies to facilitate business and communicate messages to the several different individuals which we are now or shall hereafter be in communication with; therefore, be it resolved, that the following rules, regulations and by-laws be adopted for the conducting of the business of the several individuals that compose the said body :    *    *    *

"(9) Any person or persons may become a member of this exchange by constructing or causing to be constructed a line known as a metallic circuit (two wires) from their residences or places of business to run over the poles already set so far as possible for which said party or parties shall pay in to the treasurer the sum of ten cents (10) per pin for pins used, also an amount of six dollars ($6.00) for a drop on said board.

"(10) Each member of this association shall pay for the services of the operator the sum of two dollars ($2.00) each year unless otherwise provided for by the association.   Said sum shall be paid semi-annually in advance to the secretary, who shall receipt the same.   Any person refusing to pay said amount together with other assessments inside of sixty days from such notification shall not be entitled to switch service, and said line shall be disconnected from said exchange and to remain so until said payments shall be made.    *    *    *

" (12) Each toll line or line doing toll service now in or that may hereafter be installed shall pay into the treasury the same sum as party lines for construction, and said lines shall pay 25 per cent. of all the moneys received for toll line work into this exchange, 15 per cent. to go to the operator and 10 per cent. to go into the general fund of the exchange.

"(13) All assessments for repairs on the switchboard shall be prorated per drop.   All other repairs on the line shall be prorated by phone, said expenses for repairs to be paid out of general fund.

" (14) Each drop or line shall be entitled to one vote or representative at all meetings where assessments or business is to be adjusted *pro rata* per drop or line, and each phone or member of a party line shall be entitled to a vote

or representative in all assessments or business that shall be adjusted not pertaining to drop or switchboard.

"(15) There shall be an assessment levied of fifty cents (50) on each phone whenever the amount in the treasury shall be less than twenty-five dollars ($25.00). Other assessments may be levied as directed by a majority of the members present at any legal meeting.  *  *  *

"(17) No business shall be transacted pertaining to the governing of this association at a meeting at which a quorum is not present. A quorum shall be deemed lawful if either the president or vice president, secretary or manager, together with one-fourth of the legal voters or their representatives are present.

"(18) These by-laws may be altered or amended at any regular or special meeting by presenting to the president a written statement setting forth the facts, together with the proposed amendment, signed by five legal voters. It shall be the duty of the president to notify each voter when such amendments are to be voted on, either by written or verbal notice."

The same witness, continuing, testified:

"We got some funds from tolls for long-distance service. We never made any charge for anybody that wished to talk without they wanted to go off of our own lines, but, if they wished long-distance service, why, they would charge the regular rate. If some one in Waldron wanted to talk with Fayette, Ohio, there was originally a 10 cent charge. Now it is five. If they wanted to talk with Ransom, that was free, and Pittsford, and there was a time when we had free exchange with Camden and other parts of the county, but the last two or three years we only had the Hillsdale County Telephone Company's funds. There was not much for this all the while, but was part of the time. We talked with Hudson over the Bell phone, and there was a charge of 10 cents, which we paid to our own board and our operator settled with Bell Company. Through the Bell we got all the world pretty near. That is the way we got our service. Through the Bell and those other phones, the Williams county and the Fayette line and the Hillsdale county line. We could get most any place in Ohio or Michigan, anywhere there was a telephone. For the long-distance calls we had 25 cents, and originally the operators had 10 per cent., and the company or exchange had 15 per cent., but the last few

years the company has taken the 25 per cent. The operator gets none. The operator is the one who tends the switchboard. We had printed matter, the telephone subscribers' lists, which were distributed among the members, headed up, 'Waldron Telephone Exchange.' We kept books all the while, and a minute of our meetings. We have all the while had the officers provided for by the by-laws, and have been all that time supplying people with telephone service. * * * I think some of the people who went into the exchange originally have sold and their purchasers are using the same phone, recognized by the company as having the right to use them. A man who wanted to come in built his new line to what we called the terminal pole, the last pole, and then we connected his wire with our cable. He paid for his drop $6. He became a member of the company and had the same rights as any other member. He voted, and, if he sold his farm and sold his phone, the man who bought out took his rights, and had a right to use the phone and had the right to vote. * * * We had a free exchange with Ransom and Pittsford before the arrangement was made with the Hillsdale County Company. It was through arrangements with that company that we got this free service. When we first started, they paid us so much for the use of our lines somewhere between $50 and $60 for the first year. They gave us free service with the Hillsdale County Telephone Company, which extended over all the exchanges with which the Hillsdale Company had arrangements. They gave us $1 apiece for the use of our phone, but we did not give them anything. Later we made an arrangement whereby we had free exchange with them, and they had free exchange with us."

The Hillsdale County Telephone Company is a corporation, and in the pleadings it describes itself as a mutual company not organized for profit, but for convenience of the farmers of Hillsdale county, and of others, its patrons. Its stockholders are persons who actually own and use telephones of its exchange, its service is devoted to maintaining and extending its lines and service, no dividends are declared or paid, and its stock certificates of the par value of $50 each are sold, one share for each telephone owned, to actual patrons. On the morning of January

11, 1910, the agents of the Hillsdale County Telephone Company took possession of the building, switchboards, exchanges, wires, and apparatus of the Waldron Telephone Exchange, and have since possessed and controlled the same and offered to furnish, and furnished as required, telephonic communication for patrons of the last-named organization. This action, which, if not lawfully authorized, was a trespass, is complained about in the bill filed by the Waldron Telephone Exchange and by some 70 members thereof, who pray for a restoration of the property and an accounting.

In its defense the Hillsdale County Telephone Company asserts that a majority of the members of the Waldron Telephone Exchange authorized the action complained of, and that it is the successor in interest of these members, or of some of them, in the said exchange, which it alleges to be a copartnership, or joint association having the attributes of a copartnership. It avers that it is willing, and has at all times been willing, to issue to the complainants stock in exchange for their interest in the said Waldron Telephone Exchange, and in its answer prays that if complainants, or any of them, decline to accept the stock, a receiver may be appointed of the copartnership assets and sell them under direction of the court, and distribute the proceeds among those legally entitled to them.

The pleadings raise some questions concerning the proper parties complainant and defendant, and the defaults of some were entered. Complainants insist that, other questions aside, the action of the defendant corporation in possessing itself of the property of the Waldron Telephone Exchange cannot be defended, and that no rights or advantages can be built upon such action and possession. But the principal contention is over the right of a majority or any of the members of the Waldron Telephone Exchange to dissolve it or to transfer, by sale or otherwise, an interest therein to the defendant corporation.

In the court below the bill was dismissed and a decree favoring defendants was granted. Complainants and

certain individual defendants in the cross-bill were given 60 days in which to transfer to the Hillsdale County Telephone Company, in exchange for certificates of stock therein, their interest in complainant organization and its property. If any of them refuse to make the transfer, the Waldron Telephone Exchange is to stand dissolved, and a person named in the decree is to act as a receiver, take possession of the property, convert it into cash, and bring the funds into court. Complainants, or some of them, have appealed.

A preliminary question will first be disposed of. There has been no compliance on the part of the associating members, complainants, with the requirements of Act No. 101, Pub. Acts 1907, and it is said by defendant that the Waldron Telephone Exchange has no right to sue in the name it has assumed. No plea was interposed; for which reason, the cause having gone to hearing, if the point made has any force, we may treat the bill as a pleading of the individual complainants, whose right to file the same is not disputed. There is a further observation applying to this point and to the case generally which may be made here. The case does not involve the rights of the public or of creditors, but only the mutual rights of the associating members. The legal character of the association is important, if at all, as it affects and defines those rights.

A second point must be decided adversely to defendants. If the claim of defendant that the members of the Waldron Telephone Exchange were copartners is admitted, the seceding or outgoing partners could not forcibly dispossess those in possession, nor authorize an assignee of their interests to do so. The courts were open, as well before as after the alleged trespass, to such partners, or their assignee, for the purpose of preserving the property and determining the rights of members of the association. Little harm appears to have been done because the telephone service was continued, and, as the mutual rights of members of the exchange must be determined before a

final adjustment of the trouble can be made, the meritorious question is considered.

There are some disputed questions of fact which seem to be regarded by the parties as important. As to them, we find that the by-laws of complainant association were never regularly amended, and therefore the adoption of a by-law which provided for a governing body, called directors, did not in fact change the existing order of things. We find, too, that the votes of members, at various meetings, relied on by defendant as evidence of its right to assume possession and control, are of no force in fact or in law in determining the question now considered.

Certain members of complainant association, whether they are a majority of all members we cannot determine, have assumed to transfer to the defendant corporation their interests in the complainant, and in consideration of such transfer have been given stock in defendant corporation. These members and perhaps others have expressed the desire by voting at meetings and otherwise to connect or consolidate the property and the service of complainant association and the defendant corporation. So far as they could do so, they have given the desire effect. Other members of the complainant association prefer to continue the association and its service. Unable to agree, they must all of them stand upon their legal rights. The case is in many respects a peculiar one. It has not been the purpose of any seceding member to simply withdraw himself from the association. The purpose has been, and is, a consolidation, which, if accomplished, will leave each member, as before, with his telephone and his connection with an exchange, but able to communicate with more people and, perhaps, to secure better service. In other words, it is proposed to employ the property of the Waldron Telephone Exchange in connection with that of the Hillsdale County Telephone Company, the effect being to destroy the identity of the complainant association. The by-laws of complainant association, which we must assume are the rules which its members have mutually

agreed shall control them, do not provide for such a contingency. They provide for admitting, but not for dismissing, members who are not in default. In a copartnership the withdrawal of a member generally works a dissolution. In a joint-stock company, or a joint adventure which is neither a partnership nor joint-stock company, the effect of the withdrawal of a member, there being no express agreement upon the subject, would not ordinarily work a dissolution. The practice of permitting one who purchased the property and the telephone of a member of complainant association to "step into the shoes of the man he bought of" seems not to have been intended as a recognition of the right of a withdrawing member to sell an interest in the association, but amounted to receiving a new member in place of the one going out.

As a general rule, there can be no partnership where parties have not by agreement created one. This may be said also of joint-stock companies, and, indeed, of all joint adventures. They are, with greater or less particularity, agreed to by the adventurers.

"A partnership is a voluntary unincorporated association of individuals whose legal relation is based upon their agreement, and needs no special statutory authority to give it force and effect. They continue to act in this relation as individuals. They sue and are sued only in their individual names. The death of one operates usually to terminate the relation. The transfer of the interest of one has usually the same effect, and operates, not to introduce the transferee into the relation, as a party to it, but merely to give him such share as his transferer would have upon a dissolution. Each partner is, in general, personally responsible for all the debts of the partnership, notwithstanding that he has fully paid into it his agreed contribution." Mechem on Partnership, § 6.

A joint-stock company has been defined as an association of individuals for purposes of profit, possessing a common capital contributed by the members composing it, such capital being commonly divided into shares, of which each member possesses one or more, and which are transferable

by the owner. Shelford on Joint-Stock Companies, 1; Bouvier's Law Dictionary. The complainant association never had any capital and never had any shares of stock. As between the members, it was not a corporation, a partnership, or a joint-stock association. It was not organized for profit. Neither was it a club nor other social or benevolent institution. It was not intended by those associating that the withdrawal of a member should work a dissolution of the association, or that any interest in it should be transferable except that, when a member did in fact sell his home or place of business and his telephone, the purchaser might as owner of the telephone become a member if he cared to do so. It was intended and agreed that the internal affairs of the association should be controlled directly by its officers, ultimately by a majority of its members. There is no reason why these mutual and innocent agreements and understandings of members should not be given effect, and we find in them and in the business carried on no foundation for the claim that less than all of the members may by withdrawal or by an attempted transfer of interests to a third party compel either a sale of the property of the association or a dissolution. We are not required to give the association a name indicating its legal status. It is a joint adventure. For purposes of judicial control we regard it as nearest like a partnership. If there are reasons growing out of internal dissensions, or debts, or a failure to secure the joint benefit sought for by the associates, for the interference of a portion of its members in behalf of all of them in judicial proceedings, we have no doubt of the powers of a court of chancery to investigate and to grant relief as it would do in case of a partnership. No such action has been begun. No such action could be begun by the Hillsdale County Telephone Company, which is not, and could not become a member of the complainant association. It is recited in the decree as one of the premises for the relief granted that there has been such dissension among those interests of Waldron Telephone Exchange as to ren-

der its further continuance unprofitable and unsatisfactory under the present conditions and to require its dissolution.

There is, perhaps, some testimony tending to prove dissension, but there is little evidence of dissension with respect to the internal affairs of complainant association. We have stated the cause of the trouble. It was found by the trial court that the Hillsdale County Telephone Company is the owner of a majority of the stock and interests of, in, and to the Waldron Telephone Exchange. We hold it is not such owner, that it is wrongfully in possession of the property of the Waldron Telephone Exchange, and should account for its use to the association. Those members of the Waldron Telephone Exchange who have formally transferred their interests to defendant are for the purposes of this case regarded as still members of such exchange. We do not find evidence which convinces us that the members of the Waldron Telephone Exchange desire, because of its insolvency, or mismanagement, its dissolution, and a sale of its assets, or that there is such cause, as in case of a partnership, as would require its dissolution.

The decree of the court below is reversed, and a decree will be entered in conformity with this opinion. Complainants will recover from the Hillsdale County Telephone Company the costs of both courts.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred. BLAIR and BIRD, JJ., did not sit.