*288 TAYLOR, C.J.
At issue in this case is whether the Attorney General can appeal as an intervenor in this Court on behalf of the people and a state agency when the named losing parties did not themselves seek review in this Court. Notwithstanding the Attorney General’s broad statutory authority to intervene in cases, we hold that to pursue such an appeal as an intervenor there must be a justiciable controversy, which in this case requires an appeal by an “aggrieved party.” Because neither of the losing parties below filed a timely appeal, and because the Attorney General does not represent an aggrieved party for purposes of this case, there is no longer a justiciable controversy. Under such circumstances, the Attorney General may not independently appeal the Court of Appeals judgment. We therefore dismiss this appeal.
I. FACTS AND PROCEDURAL HISTORY
In 1988, Carl M. Schultz, Inc. (hereafter plaintiff), discovered that an underground storage tank and piping system located on its property had released petroleum into the soil. The Department of Natural Resources (DNR) directed plaintiff to take action to remedy this situation, and, in 1991, plaintiff began constructing an on-site treatment system. In 1992, the treatment system began operation, and, in 1993, the DNR approved plaintiffs site investigation work plan.
In 1991, defendant Oakland County Road Commission released petroleum on property adjacent to plaintiffs property. In 1992, plaintiff began to suspect that some of this petroleum had migrated onto its property. By 1995, the DNR concluded that at least some of the petroleum detected on plaintiffs property had originated from defendant’s property. In 2000, plaintiff and *289 its insurer, Federated Insurance Company, filed a cost-recovery action against defendant pursuant to provisions of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 et seq., for the added costs associated with the cleanup of petroleum contaminants that had originated from defendant’s property.
The trial court granted defendant’s motion for summary disposition, concluding that the action was barred by the six-year limitations period found in the NREPA, and the Court of Appeals affirmed. 263 Mich App 62; 687 NW2d 329 (2004). On behalf of the people of the state and the Michigan Department of Environmental Quality (MDEQ) (the successor to the DNR), which had never been a party in the trial court proceedings or in the appeal in the Court of Appeals, the Attorney General then filed a timely application for leave to appeal in this Court as an intervening appellant. Plaintiffs, however, did not file a timely application for leave to appeal even though they “lost” under the Court of Appeals opinion. This Court granted the Attorney General’s application for leave to appeal and denied plaintiffs’ cross-application for leave to appeal. 472 Mich 898 (2005).[1]
*290 II. STANDARD OF REVIEW
Defendant argues that the Attorney General lacks the authority to intervene to appeal the judgment of the Court of Appeals. Because this issue implicates the constitutional authority of the judiciary and the Attorney General, we review it de novo. Co Rd Ass’n of Michigan v Governor, 474 Mich 11, 14; 705 NW2d 680 (2005).
HI. ANALYSIS
Following adjudication in the Court of Appeals that resulted in a published opinion, where the parties were plaintiffs Federated Insurance Company and Carl M. Schultz, Inc., and defendant Oakland County Road Commission, the Attorney General, representing the people of the state and the MDEQ, has now sought to appeal in this Court, even though neither of the losing parties in the Court of Appeals sought timely leave to appeal. The Attorney General argues that the Court of Appeals misconstrued MCL 324.20140(l)(a), a statute that the MDEQ frequently litigates. Resolution of whether this intervention and appeal are permissible implicates standing, the “aggrieved party” concept, and what constitutes a justiciable controversy.
As we indicated in Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608, 612; 684 NW2d 800 (2004), citing Lee v Macomb Co Bd of Comm’rs, 464 Mich 726, 734; 629 NW2d 900 (2001), standing refers to the right of a party plaintiff initially to invoke the power of the court to adjudicate a claimed injury in fact. In such a situation it is usually the case that the defendant, by contrast, has no injury in fact but is compelled to become a party by the plaintiffs filing of a lawsuit. In appeals, however, a similar interest is vindi *291 cated by the requirement that the party seeking appellate relief be an “aggrieved party” under MCR 7.203(A) and our case law.[2] This Court has previously stated, “To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency.” In re Estate of Trankla, 321 Mich 478, 482; 32 NW2d 715 (1948), citing In re Estate of Matt Miller, 274 Mich 190, 194; 264 NW 338 (1936).[3] An aggrieved party is not one who is merely disappointed over a certain result.[4] Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking *292 the court’s power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case.[5]
With regard to the necessity of a justiciable controversy, it derives from the constitutional requirement that the judiciary is to exercise the “judicial power” and only the “judicial power.”
In giving meaning to what the “judicial power” is in our Constitution, we explained in Nat’l Wildlife Federation, supra at 614-615:
The “judicial power” has traditionally been defined by a combination of considerations: the existence of a real dispute, or case or controversy; the avoidance of deciding hypothetical questions; the plaintiff who has suffered real harm; the existence of genuinely adverse parties; the sufficient ripeness or maturity of a case; the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making.
Perhaps the most critical element of the “judicial power” has been its requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a “particularized” or personal injury. [Citation omitted.][6]
*293 The Attorney General’s authority to intervene is found in two statutes.
MCL 14.101 states:
The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.
Similarly, MCL 14.28 states:
The Attorney General shall prosecute and defend all actions in the supreme court, in which the state shall be . interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his direction, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in *294 any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.
These statutes purport to provide the Attorney General with the authority to prosecute, defend, and intervene in certain “actions.” But, this case ceased to be an “action” when the losing parties below (plaintiffs) failed to file a timely application for leave to appeal in this Court. Once plaintiffs’ deadline for filing a timely application for leave to appeal expired, the case ceased to be a justiciable controversy.[7] To the extent one might read MCL 14.101 or MCL 14.28 as allowing the Attorney General to prosecute an appeal from a lower court ruling without the losing party below also appealing, and without the Attorney General himself being or representing an aggrieved party, the statutes would exceed the Legislature’s authority because, except where expressly provided,[8] this Court is not constitutionally authorized to hear nonjusticiable controver *295 sies.[9] Nat’l Wildlife Federation, supra at 614-615. To give these statutes such a reading would contravene an operative presumption of this Court that we presume constitutional intent on the part of the Legislature. See Phillips v Mirac, Inc, 470 Mich 415, 422; 685 NW2d 174 (2004).
IV RESPONSE TO THE DISSENT
The dissent relies on two cases in arguing that the Attorney General should be allowed to appeal in this Court notwithstanding the fact that the losing parties below did not file a timely appeal: Mundy v McDonald, 216 Mich 444; 185 NW 877 (1921), and Russell v Peoples Wayne Co Bank of Dearborn, 275 Mich 415; 266 NW 401 (1936). These cases, however, are not inconsistent with our holding today; nor do they support the holding the dissent would adopt.
In Mundy, a circuit judge was sued in circuit court for libel. The Attorney General’s office, on behalf of the circuit judge, sought dismissal of the lawsuit. On appeal, this Court rejected the argument that the Attorney General’s office could not defend a circuit judge who had been sued. The Attorney General’s office represented an actual defendant party in that lawsuit.
In Russell, a receiver of the Detroit Banker’s Company filed a lawsuit seeking to have liquidating receivers appointed for other banks. The Attorney General’s office intervened in the case and moved to dismiss the lawsuit. On appeal, the plaintiff argued that the Attor *296 ney General should not have been permitted to move to dismiss the case because the public had no interest in the litigation. This Court rejected the plaintiffs claim because the banking commissioner became a “party” when the plaintiff sought to have receivers appointed. Again, the Attorney General’s office represented an actual party in the litigation.
Each of these cases is inapposite because it presented a justiciable controversy wherein the Attorney General represented an actual party. In the case at bar, however, no justiciable controversy exists and the Attorney General does not represent a party to the dispute. Moreover, none of these cases cited by the dissent involved the Attorney General attempting to appeal a decision of a lower court without the losing party below also appealing.
Our opinion does not overrule any cases. Under our holding, the Attorney General remains free to prosecute actions on behalf of the state and may appear on behalf of state parties.[10] Moreover, it is not inconsistent with the Attorney General’s authority to intervene in “actions.” As previously explained, we merely hold that the Attorney General’s authority to intervene does not include the ability to appeal a nonjusticiable case. Given the untethered language in the dissent, one has to wonder if there is any circumstance in which the dissent would conclude that the Attorney General would not have the authority to intervene and pursue an appeal no matter how unrelated the Attorney General’s “interest” may be to traditional standing considerations.
*297 Contrary to the dissent’s contention, the issue of the Attorney General’s authority to independently intervene and appeal the Court of Appeals opinion was raised by the defendant in its brief on appeal; it was argued at oral argument, and it was briefed by the Attorney General and defendant in supplemental briefs. Finally, contrary to the dissent’s contention, we are not expanding the standing theory; rather, our holding is consistent with our prior case law as cited in n 2 of this opinion.
V CONCLUSION
We conclude that there is no justiciable controversy because the Attorney General does not represent an aggrieved party and because neither of the losing parties below chose to file a timely application for leave to appeal. Under such circumstances, this Court does not have the authority to hear the Attorney General’s appeal. Therefore, we dismiss the appeal.
Corrigan, Young, and Markman, JJ., concurred with Taylor, C.J.

 Plaintiffs filed an application for leave to appeal in this Court after the deadline for filing an application for leave to appeal had expired. Plaintiffs sought to avoid MCR. 7.302(C)(3) (“[l]ate applications will not be accepted”) by designating the appeal as a cross-application for leave to appeal. Plaintiffs’ “cross-application” fully supported the Attorney General-intervening appellant’s application for leave to appeal. But, plaintiffs cannot be considered cross-appellants where their position is the same as that taken by the Attorney General-intervening appellant. Therefore, although plaintiffs referred to their application for leave to appeal as a cross-application, it was actually an untimely application for leave to appeal. This is why we denied plaintiffs’ application.

 See, e.g., Ford Motor Co v Jackson (On Rehearing), 399 Mich 213, 225; 249 NW2d 29 (1976) (Coleman, J.), citing In re Critchell’s Estate, 361 Mich 432; 105 NW2d 417 (1960). “ ‘A party who could not benefit from a change in the judgment has no appealable interest.’ ” “ ‘[0]f course one may not appeal from a judgment, order or decree, in his favor by which he is not injuriously affected.’ ” Id. at 226, quoting 4 Am Jur 2d, Appeal and Error, §§ 182, 184. See also In re Estate of Trankla, 321 Mich 478, 482; 32 NW2d 715 (1948) (“ ‘It is a cardinal principle, which applies alike to every person desiring to appeal, that he must have an interest in the subject-matter of the litigation. Otherwise, he can have no standing to appeal.’ ”) (citation omitted).

 The Attorney General does not fit within this definition of an “aggrieved party.” Thus, contrary to the dissent’s claim, our holding is not “unprecedented.” The dissent further asserts that we are legislating from the bench a new restriction on the Attorney General’s authority to intervene. Nothing could be further from the truth. Our holding is fully supported by constitutional principles and prior case law.

 The dissent contends that the Attorney General has standing because the MDEQ, the state agency that the Attorney General is representing, is “interested in the proper enforcement of the NREPA....” Post at 307. However, if an interest in the proper enforcement of a statute were enough to confer standing, the Attorney General would always have standing because the people of Michigan and state agencies are always interested in the proper enforcement of statutes. Contrary to the dissent’s contention, an interest in the proper enforcement of a statute has never before been thought sufficient to confer standing; instead, a concrete and particularized injury is required to confer standing.

 Tachiona v United States, 386 F3d 205, 210-211 (CA 2, 2004). See also Kootenai Tribe of Idaho v Veneman, 313 F3d 1094, 1109 (CA 9, 2002).

 The dissent once again also accuses us of “further expanding] [our] judicial power ....” Post at 312 n 18. However, as this Court in Nat’l Wildlife, supra at 617-618, said:
*293 [T]he exact opposite is true. By its adherence to Lee, the majority opinion rejects a constitutional regime in which the judicial branch can be invested with extra-constitutional powers at the expense of the other branches, in particular the executive. One need only be a casual student of government to recognize the extraordinary rarity of an institution of government, such as this Court, choosing, on the basis of constitutional objection, not to exercise a power conferred upon it by another branch of government. It is impenetrable reasoning to equate such an abnegation of power with an enhancement of power. [Emphasis in original.]

 If plaintiffs had filed a timely application for leave to appeal, there would obviously have been a justiciable controversy in which the Attorney General could have intervened. Consistent with the principles of appellate standing, where the Attorney General intervenes solely to advocate a general position on the law, the intervention statutes on which the Attorney General relies confer on the Attorney General only a form of “statutory amicus,” not true party, status. Thus, if the Attorney General had sought to intervene in a timely filed appeal by a party with appellate standing — not to represent a client that had suffered an adverse decision of a lower court but only to advance a perspective on the law — the Attorney General’s role would have been limited to advocating the state’s position on the law. Whatever role the Attorney General may properly play in an appeal in which he intervenes, the precondition for intervention is that there must be a timely appeal by a party that has appellate standing as outlined in this opinion.

 See, e.g., Const 1963, art 3, § 8, which permits the legislative and executive branches of government to request an opinion of this Court on the constitutionality of legislation not yet in effect.

 Although the MDEQ might well have an interest in how MCL 324.20140(l)(a) is interpreted, it has not yet suffered a concrete injury on the basis of the alleged misconstruction of the statute. Moreover, no reason exists to prevent the Attorney General from filing a lawsuit on behalf of the MDEQ once the MDEQ has suffered such an injury, e.g., is denied reimbursement costs.

 Indeed, contrary to the dissent’s contention, we are not holding that the Attorney General cannot appeal to this Court unless the named losing party also appeals; rather, we are holding that the Attorney General cannot appeal unless some aggrieved party appeals. There may be instances where the Attorney General himself or a party he is representing is aggrieved. This, however, is not such a case.