*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PRENG DEDA,

      Plaintiff-Appellant,

v

LOUIS JOSEPH WINTERS,

      Defendant-Appellee,

and

JOHN DOE and FARMERS INSURANCE
EXCHANGE,

      Defendants.

UNPUBLISHED
June 9, 2022

No. 356864
Macomb Circuit Court
LC No. 2019-002039-NI

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Preng Deda appeals as of right the trial court's March 24, 2021 order, which dismissed plaintiff's claim against defendant Farmers Insurance Exchange (Farmers). On appeal, plaintiff challenges the trial court's September 23, 2020 order, which granted summary disposition in favor of defendant, Louis Joseph Winters. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from a motor vehicle accident that occurred in the early morning hours while plaintiff and Winters were traveling on the eastbound side of I-696, which has four lanes. According to plaintiff, he was driving in the "second [lane] from the left" when he saw a police cruiser turn its lights on and begin traveling west down the eastbound side of I-696. Plaintiff noted that the police cruiser traveled on the right shoulder of the expressway. Plaintiff explained that he and the vehicles in front of him began to slow down. Plaintiff was then hit from behind, which

-1-

forced his vehicle into "the leftmost lane. . . ." Plaintiff's vehicle was then rear-ended by a second vehicle.

One of the vehicles that hit plaintiff was being driven by Winters, who indicated after the accident that traffic had unexpectedly slowed as a result of "a police chase going westbound on the eastbound side of the freeway." According to Winters, he was unable to avoid rear-ending plaintiff's vehicle, which he acknowledged was traveling in the same lane as Winters's vehicle before the accident.

Plaintiff was allegedly injured in the accident. He filed suit against Farmers, an unknown defendant, and Winters. Plaintiff claimed that Winters's negligence had caused his injuries. Winters denied liability, and discovery commenced. During a deposition that occurred three years after the accident, Winters testified that he rear-ended plaintiff's vehicle after the vehicle suddenly and unexpectedly veered into Winters's lane and braked.

Winters moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing that he was absolved of liability for the accident because the police chase resulted in plaintiff swerving into Winters's lane, which created a sudden emergency. Winters argued that it was impossible for Winters to predict that the police chase would cause plaintiff to swerve into Winters's lane and suddenly brake. Plaintiff denied that there was any police chase or that he swerved into Winters's lane, and he asserted that a genuine issue of material fact existed regarding the cause of the accident and whether there was a sudden emergency.

The trial court granted Winters's motion in a September 23, 2020 opinion and order. In its opinion granting summary disposition in favor of Winters, the trial court concluded that no genuine issue of material fact existed regarding whether there was a sudden emergency even though the evidence conflicted. The trial court dismissed plaintiff's claims against Winters and later entered a stipulated order of dismissal as to plaintiff's claims against Farmers. This appeal followed.

## II. JURISDICTIONAL CHALLENGE

At the outset, we must address Winters's argument that this Court lacks jurisdiction to decide this appeal because the March 24, 2021 order did not "aggrieve" plaintiff. We conclude that Winters's argument is without merit.

This Court reviews de novo whether it has jurisdiction. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). MCR 7.203(A)(2) provides that this Court "has jurisdiction of an appeal of right *filed by an aggrieved party* from" "[a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." (Emphasis added.) "An aggrieved party is not one who is merely disappointed over a certain result. Rather, . . . a litigant must have suffered a concrete and particularized injury. . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) (footnote omitted). "[A] litigant on appeal *must demonstrate an injury arising from . . . the actions of the trial court . . .* rather than an injury arising from the underlying facts of the case." *Id*. at 292

-2-

(citations omitted; emphasis added).  As stated in *Grace Petroleum Corp v Pub Serv Comm*, 178 Mich App 309, 312-313; 443 NW2d 790 (1989):

> An appeal can only be taken by parties who are affected by the judgment appealed from.  There must be some substantial rights of the parties which the judgment would prejudice.  *A party is aggrieved by a judgment or order when it operates on his rights and property or bears directly on his interest.  To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency.*  [Citations omitted; emphasis added.]

In this case, plaintiff filed suit against Winters, alleging that he was liable for plaintiff's injuries as a result of his negligent conduct.  The trial court granted summary disposition in favor of Winters, thereby resulting in the dismissal of plaintiff's claims against Winters.  Because plaintiff has a pecuniary interest in the outcome on appeal, we conclude that plaintiff is an aggrieved party with regard to the September 23, 2020 order.

Although plaintiff appeals as of right from the March 24, 2021 stipulated order of dismissal, plaintiff does not challenge the March 24, 2021 order.  Rather, the March 24, 2021 order was "the first . . . order that dispose[d] of all the claims and adjudicate[d] the rights and liabilities of all the parties. . . ."  MCR 7.202(6)(a)(i).  On appeal, plaintiff challenges the trial court's September 23, 2020 order granting summary disposition in favor of Winters.  Importantly, "[w]here a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case." *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992).  Thus, Winters's jurisdictional argument fails.

## III.  SUMMARY DISPOSITION

## A.  STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim.  When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion.  A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact.  A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.  [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"[A] trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## B. ANALYSIS

On appeal, plaintiff generally contests the trial court's determination that Winters was entitled to summary disposition on the basis of the sudden-emergency doctrine. We conclude that the trial court erred by granting summary disposition in favor of Winters.

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (footnote omitted).

In this case, Winters argued that he was absolved of liability because the sudden-emergency doctrine applied. This Court has previously observed that "[t]he sudden-emergency doctrine is a judicially created principle," pursuant to which

> [o]ne who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. [*Vsetula v Whitmyer*, 187 Mich App 675, 680-681; 468 NW2d 53 (1991) (quotation marks and citation omitted).]

"The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591 (2008) (quotation marks and citation omitted). "To come within the purview of this rule the circumstances attending the accident must present a situation that is unusual or unsuspected." *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (quotation marks and citations omitted). "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature." *Id*. "To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clearview for any significant length of time, and was totally unexpected." *Id*.

Importantly, the sudden-emergency doctrine is not an affirmative defense. *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971). "In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule. *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965). "[T]he test to be applied is what that hypothetical, reasonbly [sic] prudent person would have done under all the circumstances of the accident, whatever they were." *Id*. "A sudden emergency is simply one of the circumstances to be considered in determining whether an act or conduct was negligent." *Woiknoris v Woirol*, 70 Mich App 237, 240-241; 245 NW2d 579 (1976). Our Supreme Court has further explained:

> The standard of care required of one suddenly confronted with an emergency is a question frequently presented for consideration. . . . The degree of care required in such situations, however, does not vary merely because of the existence of the unusual circumstances. The standard is neither higher nor lower,

the inquiry remaining the same as to whether the one sought to be charged with negligence acted as a reasonably prudent man would act under the same or similar circumstances. [*Triestram v Way*, 286 Mich 13, 17; 281 NW 420 (1938).]

"Ordinarily, it is for the jury to determine whether a defendant's conduct fell below the general standard of care." *Case*, 463 Mich at 7. "It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs." *Id*. at 10 (quotation marks and citation omitted).

We conclude that material evidence conflicts concerning the purported sudden emergency. According to plaintiff, he was driving in the "second [lane] from the left" when he saw a police cruiser "turn[ ] around," turn its lights on, and begin traveling westbound on the eastbound side of I-696. Plaintiff noted that the police cruiser was traveling on the right shoulder of the expressway. Plaintiff explained that he and the vehicles in front of him began to slow down. Plaintiff stated he was hit from behind "by someone who was going fast," which forced his vehicle into "the leftmost lane. . . ." Plaintiff's vehicle was then rear ended by a second vehicle. Plaintiff did not provide descriptions of the vehicles that hit him, thereby making it unclear if Winters was driving the first or the second vehicle.

Winters indicated during a recorded statement that was taken shortly after the accident that he was driving eastbound on I-696 in the third lane from the right. After he maneuvered his vehicle "around a big curve," he saw "there was a police chase going westbound on the eastbound side of the freeway." According to Winters, "everyone just slammed on their brakes to try to avoid it." Winters indicated that he "hit [his] brakes really hard," but his vehicle "just didn't stop." Winters indicated that he was not sure "if one of [the] brake lines broke or what happened. . . ." Winters indicated that he attempted to "swerve" to the left, but was unable to avoid plaintiff's vehicle. Winters rear ended plaintiff's vehicle.

However, during a July 2020 deposition, Winters changed his version of the events and essentially indicated that *plaintiff* had caused the accident. Specifically, Winters testified that he saw multiple police cruisers enter the highway from the exit ramp and begin to travel west. At that time, Winters "was in the lane next to the farthest right lane." Several police cruisers used the lane on Winters's right to pass Winters. Winters testified that plaintiff was in the lane immediately to his left. When asked what he did in response to seeing the police cruisers, Winters responded, "I didn't have a chance to do anything because the Plaintiff got right in front of me and slammed on [his] brakes." Winters rear-ended plaintiff's vehicle. Winters indicated that plaintiff was not in danger of being in contact with the police cruisers when he pulled in front of Winters because plaintiff was on Winters's left side. According to Winters, he did not try to swerve to avoid plaintiff's vehicle. Instead, he unsuccessfully attempted to avoid the collision by hitting his brakes. Winters denied that he ever indicated that the brakes on his vehicle did not work.

A question of fact exists as to whether plaintiff and Winters were traveling in the same lane before the collision occurred, and the question of fact is material to the outcome of this case. The location of the vehicles in the time leading up to the accident is important because, as already stated, "[t]o come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clearview for any significant length of time, and

was totally unexpected." *Vander Laan*, 385 Mich at 232. If the trier of fact believes the version of events contained in Winters's recorded statement and concludes that Winters's vehicle was the vehicle that plaintiff described as "going fast," the trier of fact could conclude that the emergency was not "totally unexpected" because Winters had sufficient time to observe the potential peril, i.e., the slowing traffic, but did not react in a prudent manner. Importantly, Winters's testimony supports that "[i]t was . . . [a] [n]ice, clear night," thereby supporting that Winters's vision was not obstructed by "a phenomenon of nature." See *id*. A rational trier of fact could also find that slowing traffic, regardless of the reason, is a common occurrence that motorists face and is therefore not unusual. On the other hand, if the trier of fact finds that plaintiff's vehicle unexpectedly veered into Winters's lane and that Winters did not have time to avoid the collision, the sudden-emergency doctrine may apply. Furthermore, the trier of fact could conclude that a sudden emergency existed because police cruisers were traveling westbound on the eastbound side of I-696 in the time leading up to the collision. Because material questions of fact exist, the trial court erred by granting summary disposition in favor of Winters.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle