*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EDMUND TALANDA TRUST.

|  |  |
|---|---|
| TIMOTHY J. WAALKES, Trustee of the EDMUND TALANDA TRUST, CAMILLE FATH, and EDMUND MARK TALANDA, | UNPUBLISHED<br>June 23, 2022 |
| Appellees, | |
| v | No. 358074<br>Kent Probate Court |
| ANNETTE TALANDA BRENNAN, | LC No. 20-207552-TV |
| Appellant, | |
| and | |
| KATHLEEN TALANDA POTTS, SUSAN MINEHART, also known as SUSAN TALANDA, KALAMAZOO COUNTY, and JOHNSON FAMILY, | |
| Other Parties. | |

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Appellant, Annette Talanda Brennan, (Brennan) appeals the probate court's July 20, 2021 order transferring ownership of a lakefront cottage from the Edmund Talanda Trust (the trust) to appellees Camille Fath (Fath) and Edmund Mark Talanda (Edmund).[1] Brennan also appeals the probate court's January 29, 2021 order granting summary disposition under MCR 2.116(C)(10) in

---

[1] The settlor of the trust, Edmund Talanda (now deceased) has a son (and trust beneficiary) also named Edmund Talanda. To avoid confusion, we will refer to the deceased Edmund Talanda as "Edmund Talanda" and the living Edmund Mark Talanda as "Edmund."

-1-

favor of Fath and Edmund with regard to the cottage. We dismiss this appeal for lack of jurisdiction.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

During their lifetimes, Edmund and Dorothy Talanda both established revocable living trusts: the Edmund Talanda Trust and the Dorothy Marie Talanda Trust. Each served as the initial trustee of their respective trusts until their deaths. This appeal pertains to the Edmund Talanda Trust; specifically, the transfer of real property from the trust to Fath and Edmund.[2] With the exception of appellee Timothy Waalkes (Waalkes) (the trustee), parties are siblings who are beneficiaries of their father's trust: Laraine Goetting (Goetting), Michele Kraft (Kraft), Fath, Edmund, Kathleen Potts (Potts), Susan Minehart (Minehart), and Brennan. Fath and Brennan acted as cotrustees of the trust after their father's death; however, disagreements with regard to the distribution of assets arose, making it impossible to finalize the administration of the trust. The dispute resulted in a rift among the siblings with Fath, Edmund, Potts, and Minehart on one side, and Brennan, Kraft, and Goetting on the other.

In an effort to resolve their differences, the parties participated in a mediation to determine the disposition of the trust's assets. After an extensive mediation, the mediator made a proposal for the resolution of the remaining issues. That proposal was adopted as a settlement agreement on October 29, 2019. As part of that agreement, Fath and Brennan agreed to resign as cotrustees, and Waalkes was appointed as the successor trustee in April 2020. Relevant to this appeal, the settlement agreement addressed the distribution of the lakefront cottage (the cottage) owned by the trust. The settlement agreement provided:

> The interest of the Estates and Trusts in the Gourdneck Lake cottage property will be assigned to Ed Talanda, Camille Fath, Susan Talanda, and Kathleen Potts for the agreed upon price of $60,000. Ed Talanda, Camille Fath, Susan Talanda[3], and Kathleen Potts will take immediate and exclusive possession and pay all costs, fees, etc. Ed Talanda, Camille Fath, Susan Talanda, and Kathleen Potts have until November 28, 2019 to notify the Trust whether they want to consummate the transaction. In the event they decline, then the property will be immediately listed for sale on such terms as the Trustee of the Trust determines.

The cottage is located on Gourdneck Lake in Vicksburg, Michigan, and is landlocked by Prairie View Park, which is owned and maintained by Kalamazoo County. The trust owned a one-half interest in the cottage, while another family (the Johnson family) owned the other one-half interest. The cottage has been the subject of extensive litigation. In 1962, Kalamazoo County filed a condemnation lawsuit against the owners of the cottage, seeking to obtain ownership by eminent domain. The condemnation suit resulted in a settlement agreement, which was executed

---

[2] There is also a dispute involving an undeveloped lake lot held by the Dorothy Marie Talanda Trust. That dispute is the subject of the appeal in Docket No. 356293 and will not be addressed in this opinion.

[3] Susan Talanda is now Susan Minehart.

on January 28, 1963. The agreement provided that the county would have the first option to purchase the cottage in the event that the owners wished to sell it.

The cottage was the subject of another condemnation lawsuit while the beneficiaries participated in mediation. The trust was represented by attorney Ronald Ryan in that litigation. After the mediation concluded, Fath contacted Ryan and informed him that she and Edmund would be taking possession of the cottage, and requested that Ryan contact them with regard to matters pertaining to the cottage. On November 15, 2019, Ryan sent the beneficiaries and their respective counsel an e-mail directing them not to transfer the cottage out of the trust. He explained that he did not want to give the county an argument that the 1963 settlement agreement was breached by transferring the cottage to Fath and Edmund. However, he recommended preparation of a "desk drawer" deed with Fath's and Edmund's names on it that would not be recorded until after the litigation ended. He also suggested an amendment to the trust naming Fath and Edmund as successor trustees of the cottage only.

Following Ryan's advice, Fath and Brennan, who at the time were cotrustees of the trust, signed a deed prepared by Ryan transferring the trust's interest in the cottage to a limited liability company, Point Gloria, owned by all the trust beneficiaries; however, this deed was never recorded. The beneficiaries continued to negotiate with respect to the distribution of trust assets. The mediator proposed an amendment to the settlement agreement that provided for Fath and Edmund to receive the cottage, but for it to remain in the trust until the litigation was concluded. However, that amendment was never agreed upon or implemented.

In June 2020, Fath, Edmund, and Potts filed a petition in the probate court to enforce the settlement agreement. Regarding the cottage, the petition asserted that Fath and Edmund had complied with the requirements in the settlement agreement and, therefore, were entitled to possession of the cottage. Fath and Edmund argued that the settlement agreement only required them to provide notice if they decided to opt out of purchasing the cottage, but that there was no doubt in any event that they had provided both actual and constructive notice to representatives of the trust of their intent to purchase the cottage. Fath, Edmund, and Potts then moved for summary disposition, arguing that there was no genuine issue of material fact regarding the transfer of the cottage from the trust. Brennan responded to the petition, noting that during the negotiation of the settlement agreement, Fath and Edmund had proposed that the cottage remain within the trust on the basis of Ryan's advice. Brennan argued that this proposal was essentially a counteroffer to the settlement agreement language allowing Fath, Edmund, Potts, and Minehart to purchase the cottage. Brennan further argued that Fath and Edmund had not notified the trust that they wanted to consummate the transaction that was identified in the settlement agreement, and that the trust therefore was not obligated to transfer the cottage's title to them. Goetting and Kraft moved for summary disposition, arguing that Fath and Edmund were not entitled to the cottage under the settlement agreement. The probate court held a hearing with respect to the beneficiaries' respective motions for summary disposition in November 2020. At the end of that hearing, the court ruled that Fath and Edmund were entitled to the transfer of the trust's ownership interest in the cottage.

Subsequently, Kalamazoo County provided notice to Waalkes of its desire to exercise its option to purchase the trust's interest in the cottage for $60,000. Shortly after, the county filed a motion to intervene in this case, which was granted.

On January 29, 2021, the probate court entered an order granting Fath and Edmund's motion for summary disposition. The order stated that Fath and Edmund had given timely notice to the trust that they intended to accept an interest in the cottage as provided in the settlement agreement. The order stated that it was not a final order with respect to any assignment of the cottage, and that no determination had been made as to whether the county was entitled to enforce its alleged contractual right of first refusal. However, the order also stated that the transfer of the cottage from the trust to Fath and Edmund was valid and that it was "a final order of the court with respect to the Trusts' [sic] interest in the Gourdneck Lake Lot, and resolves all pending claims before this court with respect to the Trusts' [sic] interest in that property, pursuant to MCR 2.602(A)(3)." The parties stipulated to the entry of an order on February 23, 2021 stating that Edmund and Fath were the only beneficiaries of the trust who have an interest in the disposition of the cottage property, and ordering that the interested beneficiaries alone would bear all expenses, fees, and costs in the future.

The county subsequently moved for summary disposition, arguing that there was no genuine issue of material fact that the county's option to purchase the cottage took priority over the interest of Fath and Edmund. The probate court agreed, ruling that the county had the first option to buy the interest in the cottage. Waalkes petitioned the probate court for instruction regarding the transfer of the cottage. In July 2021, the probate court issued an order directing Waalkes to execute and deliver a quitclaim deed conveying the trust's cottage interest to Edmund and Fath for the stated consideration of $1. In addition, the order directed that Edmund and Fath would receive title to the cottage interest, subject to the county's rights under the 1963 settlement agreement. Therefore, Edmund and Fath would have the sole responsibility for negotiating with the county with regard to the 1963 agreement, and if they accepted a purchase offer, they were entitled to retain all proceeds from the sale. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo as a question of law whether this Court has subject-matter jurisdiction. *New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 45-46; 964 NW2d 24 (2020). This issue of a court's jurisdiction may be raised at any time, even for the first time on appeal. *Id.* at 45.

## III. ANALYSIS

Brennan had no interest in the cottage at the time of the probate court's July 23, 2021 order; she was therefore not aggrieved by that order. Further, Brennan stipulated that Fath and Edmund were the only beneficiaries of the trust who had an interest in the disposition of the cottage property interest, and therefore may not challenge the probate court's January 29, 2021 order.

"This Court's jurisdiction to hear an appeal by right is determined by application of the court rules." *New Covert Generating* Co, 334 Mich App at 46. MCR 5.801(A) provides that "[a] party or an interested person aggrieved by a final order of the probate court may appeal as a matter of right as provided by this rule." An aggrieved party is one who is not merely disappointed over a certain result, but is one who "suffered a concrete and particularized injury." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006). "[A] litigant on appeal must demonstrate an injury arising from . . . the actions of the trial court . . . rather than an injury arising

-4-

from the underlying facts of the case." *Id*. at 292 (citation omitted; emphasis added). As stated in *Grace Petroleum Corp v Public Service Comm*, 178 Mich App 309; 312-313; 443 NW2d 790 (1989):

> An appeal can only be taken by parties who are affected by the judgment appealed from. There must be some substantial rights of the parties which the judgment would prejudice. A party is aggrieved by a judgment or order when it operates on his rights and property or bears directly on his interest. To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency. [Citations omitted; emphasis added.]

A final order includes orders "designated as final under MCR 2.604(B)." See MCR 7.202(6)(a)(ii). MCR 2.604 governs judgments entered in actions involving multiple claims or multiple parties; subrule (B) states that "[i]n receivership and similar actions, the court may direct that an order entered before adjudication of all of the claims and rights and liabilities of all the parties constitutes a final order on an express determination that there is no just reason for delay." Further, final orders affecting the rights or interests of an interested person in a trust are defined and limited to the orders listed in MCR 5.801(A)(2), which includes orders "determining title to or rights or interests in property." See MCR 5.801(A)(2)(o). Additionally, MCR 5.801(A)(5) also allows an appeal by right from "an ordered entered in a probate proceeding, other than a civil action commenced in probate court, that, otherwise affects with finality the rights or interests of a party or an interested person in the subject matter."

The probate court designated its January 29, 2021 order as a final order with respect to the trust's interest in the cottage and the validity of the transfer to Fath and Edmund. Although the probate court did not explicitly reference MCR 2.604(B) or MCR 5.801(A), it stated that the order resolved "all pending claims before this court with respect to the Trust's interest" in the cottage, and cited MCR 2.602(A)(3), which requires a court to indicate when an order resolves all pending claims before it. Therefore, under MCR 5.801(A)(2)(o) and MCR 2.604(B), Brennan should have taken an appeal by right from that order if she wished to challenge that determination, rather than waiting until the July 23, 2021 order was entered. See *Surman v Surman*, 277 Mich App 287, 294; 745 NW2d 802 (2007) ("A party cannot wait for entry of a subsequent final order to untimely appeal an earlier final order."). In any event, Brennan did more than merely fail to timely appeal that order; instead, she stipulated to the entry of an order stating that neither the trust nor Brennan herself had an interest in the cottage. Consequently, at the time the probate court entered the July 23, 2021 order, Brennan lacked an interest in the cottage and did not suffer a concrete and particularized injury from that order. *Federated Ins Co*, 475 Mich at 291. Moreover, although Brennan alternatively asks this Court to consider her appeal as on leave granted, see MCR 7.205, she makes no argument that her stipulation is invalid or void; nor did she reserve her appellate rights. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). "Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts. Like contracts, stipulated orders are agreements reached by and between the parties." *Spires v Bergman*, 276 Mich App 432, 441; 741 NW2d 523 (2007) (quotation marks and citation omitted). Brennan has not raised any contract defenses such as mistake, fraud, or

unconscionability with respect to the stipulated order. See *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997).

Simply put, Brennan had no legal interest in the cottage on July 23, 2021, and was therefore not aggrieved by the probate court's order of that date determining the rights to that property. Further, to the extent Brennan seeks to appeal the probate court's January 29, 2021 order, she not only failed to file a timely appeal, but subsequently stipulated, with no reservation of appellate rights, to an order providing that neither she nor the trust possessed an interest in the cottage,. Under these circumstances, we conclude that we lack the jurisdiction over this appeal by right, and decline to treat Brennan's appeal as being on leave granted. *New Covert Generating* Co, 334 Mich App at 45-46.

Appeal dismissed for lack of jurisdiction. Because appellees raised a challenge to this Court's jurisdiction on appeal, they may tax costs. MCR 7.219(A); cf. *Lord v Lord*, 350 Mich 697, 698-699; 86 NW2d 818 (1957).

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra