*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* KIM MARIE EDWARDS TRUST.

---

LYNN L. MARINE-ADAMS, Successor Trustee for the KIM MARIE EDWARDS TRUST, and MARK HAYWOOD, Former Successor Trustee,

      Appellees,

v

KIM MARIE EDWARDS,

      Appellant.

UNPUBLISHED
December 09, 2024
1:29 PM

Nos. 367185; 368279
Wayne Probate Court
LC No. 2010-752507-TV

---

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

In Docket No. 367185, appellant appeals as of right the probate court's orders approving the successor trustee's 12th annual account and appointing a second successor trustee. In Docket No. 368279, appellant appeals as of right the orders allowing the 14th and final annual account and granting the petition to approve the payment of a retainer fee.[1] We dismiss for lack of jurisdiction.

## I. FACTUAL BACKGROUND

Appellant, a legally incapacitated adult, suffered a brain injury while giving birth to her daughter in 2004. In 2009, appellant received approximately $2.1 million from the resolution of a related medical malpractice action. See *In re Edwards Trust*, unpublished per curiam opinion of the Court of Appeals, issued October 14, 2014 (Docket No. 317114). On June 24, 2009, the

---

[1] On April 3, 2024, this Court consolidated the appeals to advance the efficient administration of the appellate process. *In re Kim Marie Edwards Trust*, unpublished order of the Court of Appeals, entered April 3, 2024 (Docket Nos. 367185; 368279).

Wayne County Probate Court ordered the creation of the Kim Marie Edwards Irrevocable Special Needs Trust (the Trust). The proceeds from the litigation funded the Trust at its inception.

Initially, the probate court appointed appellant's mother, Jannie Edwards, as the trustee. However, because Jannie was unable to qualify for a bond, the court appointed Mark A. Haywood (Haywood) as the successor trustee. Haywood served as the successor trustee for approximately 13 years. In the years following the trust's creation, appellant lived with her sister, Melissa Edwards, in a home purchased by the Trust. Melissa was appellant's primary caregiver and funds from the Trust were used to compensate her for her services. Over the years, the court also appointed several different individuals to serve as appellant's legal guardian. When matters were brought before the court, the probate court frequently appointed James C. McCann as the guardian ad litem (GAL) to represent appellant's interests.

In January 2023, Haywood petitioned the probate court to allow the 12th annual account. On February 4, 2023, Haywood served a copy of the 12th annual account and notice of hearing on Joya Garland, who had been hired from Michigan Guardian Services to serve as appellant's guardian. On February 2, 2023, the court appointed McCann to act as appellant's GAL for purposes of the 12th annual account proceedings. By this appointment, the GAL was ordered to serve appellant consistent with the Michigan Court Rules and to prepare a report and recommendation for the court.

In his February 16, 2023 report to the court, the GAL documented his review of the Trust's income, expenditures, and itemized attorney's fees. The GAL also recounted his attempts to contact Melissa by phone. Melissa never returned the GAL's calls. Consequently, the GAL emailed the accounting to her. The GAL reported that he had not received a reply to his e-mail or any objections to the accounting. At the conclusion of his report, the GAL recommended that the probate court approve the 12th annual account of the successor trustee.

The court reviewed the 12th annual account and the GAL's report. Because it did not receive any objections to the accounting, the court dispensed with the hearing and entered an order granting Haywood's petition in February 2023.[2] In March 2023, attorney Phillip Strehle filed a motion for rehearing or reconsideration of the court's February 2023 order allowing the annual account, purportedly on appellant's behalf. Through counsel, appellant asserted that she was never properly served with the petition relative to the 12th account. Further, she alleged that a Zoom hearing had been scheduled for February 20, 2023, but when she and Melissa joined the hearing, they learned that the court had cancelled it. Appellant asserted that she was denied due process because the lack of notice deprived her of the right to orally challenge the 12th account and the GAL's report.

While the parties awaited resolution of the motion for reconsideration, Haywood petitioned the court for permission to resign as the successor trustee because "communications and relations

---

[2] MCR 5.104(C) provides, in pertinent part, that "[i]f a petition is unopposed at the time set for the hearing, the court may either grant the petition on the basis of the recitations in the petition or conduct a hearing."

with the family of the Ward have become unproductive such that the administration of the Trust is becoming increasingly challenging." In the petition, Haywood recommended that the court appoint attorney Lynn Marine-Adams as the second successor trustee. In April 2023, the court granted Haywood's petition to resign, but took under advisement the issue of Haywood's replacement.

In May 2023, the court entered an order granting appellant's motion for reconsideration and scheduling a hearing for June 23, 2023, during which it would "rehear" the "matter regarding the 12th Account" and decide who would be the successor trustee.

In a brief ostensibly submitted on appellant and Melissa's behalf, Strehle argued that there was no legal authority that permitted Haywood to nominate a successor trustee. Moreover, he argued that the court was bound by the terms of the trust, which required the court to appoint Melissa as the next successor trustee. In response, Haywood asserted that the court, pursuant to MCL 700.1302, had authority to appoint someone other than the nominee named in the trust. Further, Haywood argued that under no circumstances should the court appoint Melissa as the successor trustee. Haywood noted that because Melissa frequently requested and was paid money from the Trust for alleged services rendered, there would be a conflict of interest should she be appointed the successor trustee. Haywood argued that the trustee should be an individual who was impartial and separate from the very person that was allegedly providing services. Regarding his suggestion that the court appoint Marine-Adams as the successor trustee, Haywood argued that by making the recommendation, he was fulfilling his duty to protect the best interests of the beneficiary. Haywood acknowledged that the court was not required to follow the recommendation but asserted that he would be derelict in his duties if he did not inform the court as to why one person was acceptable and another was not.

At the June 2023 hearing, the parties presented oral arguments, which were largely consistent with their earlier submitted briefs. In addition, the court also considered the position of the GAL, who argued that the 12th account was properly served on Michigan Guardian Services, Appellant's guardian at the time. The GAL also represented that on February 10, 2023, he served all the documents, including bank statements, on Melissa. The GAL asserted that because she was simply a caregiver and not an interested party, Melissa was in no position to raise any objections or hire an attorney to act on appellant's behalf.

The GAL also reminded the court of the numerous issues in the case and the number of guardians that had been appointed. The GAL noted that currently, appellant's guardian was her 18-year-old daughter. Melissa had also been appointed and removed as appellant's guardian in the past. Two other guardians resigned because of non-cooperation. Specifically, the family refused to cooperate with Michigan Guardian Services when it served as appellant's guardian, including refusing the GAL entry into the home where appellant lived with her sister. The GAL also recalled that in 2014 and 2018 large sums of money were supplied by the Trust to repair extensive damage in the home, not caused by normal wear and tear. After recounting some of this family's history, the GAL recommended that the court appoint a professional trustee that had the experience necessary to deal with the issues in this case.

After considering the parties' positions, the court found that pursuant to MCL 700.1302, it had the authority to appoint or remove a trustee. It agreed with the GAL's overview of the

problems found in the house where appellant was staying with Melissa and expressed frustration at Melissa's repeated attempts to obstruct appellant's guardian, noting:

> I have watched people come into this Court repeatedly with problems, trying to get [Melissa] to cooperate, whatever the reason was.
>
> I saw a hearing, here pictures were shown of the destruction of that home. Holes in the wall, different explanations for a mattress that [appellant] was sleeping on that was on the floor, in the room. Even though she is the recipient of this Trust, the interior of that home did not look [like] she was being taken care of.
>
> There was testimony of roaches and things in the home, there were pictures of holes in the wall and that, I saw, when they came in the Court, and it was the same arguments.
>
> \* \* \*
>
> So, they have not been allowed to go in that home . . . . And each time there was an excuse. It was, 'we can't go, then it was Covid.' But Covid came in this country in the year 2020 and I believe they were giving them difficulty before Covid, as far as getting into the home.
>
> And as Mr. McCann said, they won't let him in the home, but they said he can meet them at the attorney's office. The idea, when I send someone out to look at a home and that I need to know that that person is safe, is that you allow in the home so they can inspect the home and see that the person is safe.

Regarding Haywood's recommendation that the court appoint Marine-Adams as the successor trustee, the court found that making a recommendation was consistent with a trustee's duties. Moreover, the court noted that it was a mere recommendation and nothing more. In any event, the court stated that it was personally familiar with Marine-Adams' skills and knew her to be smart, fair, and hard-working. The court believed that she would be capable of protecting appellant's interests. The court rejected the position of appellant's counsel that Melissa would make an excellent trustee and instead appointed Marine-Adams as the second successor trustee.

Following the appointment of a successor trustee, the court considered the propriety of Strehle representing both appellant and Melissa. The court commented that it was undisputed that appellant lacked the requisite capacity to independently retain the services of an attorney. The court also found that Melissa did not have standing in this case, as she was not a beneficiary of the Trust. Further, the court rejected the suggestion that Melissa's status as a caregiver gave her any standing in the trust matter. The court also found that service on the guardian, who was hired from Michigan Guardian Services, was proper.

In the written orders that followed, the court, on reconsideration, once again granted the petition to allow the 12th annual account. It similarly allowed the 13th annual account. The court also appointed Marine-Adams as the successor trustee and set the required bond at one million

dollars. The court did not include in its written orders anything related to Strehle's ability to represent appellant.

On June 28, 2023, Marine-Adams accepted the appointment and filed the required fiduciary bond. On August 4, 2023, Strehle filed a claim of appeal of the order accepting the 12th annual account and the order appointing Marine-Adams as the second successor trustee on appellant's behalf. Also on August 4, 2023, Haywood filed a petition to allow the 14th and final annual account and, on August 24, 2023, Haywood and Marine-Adams jointly petitioned the court for an order permitting the use of Trust funds to pay a retainer for legal fees related to appellant's appeal in Docket No. 367185.

At a hearing on October 2, 2023, Haywood represented that he had filed and served the petitions regarding the 14th and final account and the retainer fees on all of the parties and had not received any objections to them. Before Strehle could respond on appellant's behalf, the court stated that because of a conflict of interest, Strehle could not represent both Melissa and appellant. It therefore precluded Strehle from presenting any arguments on their behalf. Later, the court acknowledged that Strehle had filed objections to the petitions, but declined to consider them because the objections were untimely. The court ultimately granted the successor trustee's petition to allow the 14th and final annual account and authorized the successor trustee to pay from the Trust a $25,000 fee to the Kemp Klein Law Firm as a retainer for appellate work. This appeal followed.

## II. ANALYSIS

### A. JURISDICTION

Appellant makes several arguments on appeal regarding whether notice was properly served with a copy of the 12th annual accounting, whether the court erred by declining to appoint Melissa as the successor trustee, and whether the court further erred by refusing to allow attorney Strehle to represent both appellant and Melissa at the October 2023 hearing on the petition to allow the 14th and final accounting. However, upon review of appellant's claims on appeal, it is apparent that a jurisdictional problem exists involving appellant's standing to appeal on her own behalf.

"Whether this Court has jurisdiction to hear an appeal is a question of law reviewed de novo." *In re Farris/White Minors*, 340 Mich App 619, 624; 987 NW2d 912 (2022) (quotation marks and citation omitted). Under MCR 7.203(A)(2), this Court has jurisdiction over appeals filed by "an aggrieved party" following entry of "[a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." Generally, "[a]n aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-292; 715 NW2d 846 (2006). Of concern to us, however, is that appellant is a legally protected individual. Were this not so, it would be clear that appellant would have standing to bring this appeal, given that she is the sole beneficiary of the Trust at the heart of these proceedings. Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, a "[l]egally incapacitated individual" is "an individual, other than a minor, for whom a guardian is appointed under this act or an individual, other than a minor, who has been adjudged by a court to

-5-

be an incapacitated individual." MCL 700.1105(i). Appellant's status as a legally protected individual indicates that she does not have standing to bring this appeal on her own behalf, and instead should have done so through her legal guardian.

A guardian's job is to exercise legal authority on behalf of the incapacitated individual. *In re Guardianship of Malloy*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 165018; 165020); slip op at 7. This means that the guardian is responsible for making decisions and taking legal action in the best interests of the incapacitated person. *Id*. Pursuant to MCR 2.201(E), legally incapacitated persons are precluded from bringing lawsuits on their own behalf. The statute states, in relevant part:

> (1) Representation.
>
> (a) If a minor or incompetent person has a conservator, actions may be brought and must be defended by the conservator on behalf of the minor or incompetent person.
>
> (b) If a minor or incompetent person does not have a conservator to represent the person as plaintiff, the court shall appoint a competent and responsible person to appear as next friend on his or her behalf, and the next friend is responsible for the costs of the action.
>
> (c) If the minor or incompetent person does not have a conservator to represent the person as defendant, the action may not proceed until the court appoints a guardian ad litem, who is not responsible for the costs of the action unless, by reason of personal misconduct, he or she is specifically charged costs by the court . . . . [MCR 2.201(E)(1)(a) through (c).][3]

Consequently, we hold that appellant lacked standing to appeal on her own behalf.

Also of concern to us is the fact that attorney Strehle was hired by Melissa to represent appellant in this matter. At oral argument, Strehle stated that appellant's daughter has been appellant's guardian since 2023; our review of the record confirms this. Strehle stated that he was hired by Melissa to represent appellant on appeal, and acknowledged that appellant's guardian did not authorize the filing of the appeal. Indeed, appellant's guardian was not involved in the filing of this appeal at all. When asked at oral argument what legal standing Melissa had to hire him, Strehle responded that "you don't have to have standing in a case to hire an attorney." This is not so. Melissa is not appellant's legal guardian and has no legal authority to hire an attorney for appellant. Only appellant's guardian has that authority. See *In re Malloy*, ___ Mich at ___; slip

---

[3] We note that the rules set forth in this chapter apply "in all civil proceedings *in all courts established by the constitution and laws of the State of Michigan*, except where the limited jurisdiction of a court makes a rule inherently inapplicable or where a rule applicable to a specific court or a specific type of proceeding provides a different procedure." MCR 2.001 (emphasis added). As there is not a more specific rule applicable in appellate proceedings, and nothing that would make this rule inherently inapplicable to the matter at hand, it applies here.

op at 7, citing MCL 700.5306(1); MCL 700.5314 ("An appointed guardian exercises legal authority on behalf of, and in the best interests of, the incapacitated individual."). Should appellant continue to pursue these trust-related matters, Strehle, Melissa, and appellant's guardian would do well to remember that only appellant's guardian has the legal authority to act on appellant's behalf. For the foregoing reasons, we conclude that appellant lacked standing to bring this case on her own behalf, and that Melissa lacked authority to hire Strehle to represent appellant.

## B. MRPC 1.7

We also write to admonish attorney Strehle for his lack of professional integrity in seeking to represent both Melissa and appellant in the court below, and for his cavalier and dismissive comments when asked by this panel at oral argument to explain the propriety of his working relationship with appellant and Melissa.

"The Michigan Rules of Professional Conduct (MRPC) generally prohibit an attorney from representing multiple clients when the representation of one client is directly adverse to, or may materially limit, the attorney's representation of another client." *Killingbeck v Killingbeck*, 269 Mich App 132, 148; 711 NW2d 759 (2005), citing MRPC 1.7.[4] The rule further states that a lawyer should not represent a client under these circumstances unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risk involved. [MRPC 1.7(b)(1) and (2).]

Appellant is the beneficiary of the Trust, and Melissa is compensated for serving as appellant's caretaker with funds from the Trust. We view the conflict here as readily apparent, as Strehle's representation of Melissa could adversely affect appellant. In an effort to discern whether steps had been taken to conform with MRPC 1.7, this Court inquired of Strehle whether the conflict had been waived, or whether any documentation existed to show that appellant and Melissa had been informed of the apparent problems that could arise as a result of his dual representation. In response, Strehle asserted that it was the court's duty to inform him of the nature of the conflict, rather than his burden to show that no such conflict existed. He further asserted that Melissa's and appellant's interests were identical. In support of this assertion, he claimed that nothing in the record would show a conflict of interest, going so far as to say that there was "not a single mention or disclosure by any party of a conflict of interest . . . ." When asked directly to produce documentation to show that Melissa and appellant's legal guardian consented to dual

---

[4] We recognize that appellant argues on appeal that her due process rights were violated when the court prevented Strehle from representing her at the October 2023 hearing after finding that a conflict of interest existed as a result of Strehle's dual representation of Melissa and appellant. Again, because appellant lacked standing to bring this appeal on her own behalf, we decline to address the merits of this claim. Our concern is whether Strehle's conduct violated MRPC 1.7.

representation, Strehle laughed and stated that he has "five thousand emails" related to this case, and that "there's no way I can go through all five thousand emails today . . . ." Strehle admitted that Melissa is paying him to represent appellant.

These bald claims that no conflict existed do not inspire confidence, nor do they indicate that Strehle met his duty to comply with MRPC 1.7. There is no evidence that he consulted with Melissa and appellant's legal guardian about the potential conflict, or that Melissa and appellant's guardian consented to dual representation. Accordingly, we are gravely concerned that Strehle may have violated MRPC 1.7. However, we acknowledge that "a breach of the MRPC merely constitutes grounds for invoking the attorney disciplinary process. The rules of professional conduct promulgated by this Court . . . neither overrule nor give rise to substantive law." *In re Mardigan Estate*, 502 Mich 154, 176; 917 NW2d 325 (2018). We defer to the Michigan Attorney Grievance Commission in all matters of attorney discipline. See MCR 9.108(A).

Dismissed for lack of jurisdiction.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel